I wonder if counsel would both step up and identify yourselves for the record. May it please the court, Jessica Hunter for Damon Gordon and Labita Popovich on behalf of the state. Counsel, will you each be allowed 15 minutes in oral argument and you can save up from your 15 minutes any portion you wish for.  Of course. And I think you can safely assume we're familiar with your briefs. Good morning, your honors. May it please the court again, my name is Jessica Hunter, counsel for Damon Gordon. Your honors, here's what the officer in this case saw before he stopped and pressed my client. A teenage boy dressed in winter clothing with his hands in his pocket crossed a residential street and speak for a split second to a woman the officer knew to be a prostitute. Based on this, the officer approached and without any inquiry whatsoever immediately frisked my client. Soliciting a prostitute, that's a crime, isn't it? Solicitation of a prostitute is in fact a crime. But there was no objective indication in this record that Damon Gordon was intentionally Soliciting a prostitute even though he went up to the prostitute and started talking to her. Well, it's important to note that while the officer knew this woman to be a prostitute, he conceded on cross-examination that there was no indication that Damon knew this woman to be a prostitute. He did not testify that this woman was walking up and down the street in a manner indicative of solicitation, that she was dressed in a particular way, that she was waving at cars or indicating her services. And so I think it's extremely relevant that though the officer knew this because he testified that he had had a conversation with this woman, Erica Acudia, the evening before, in which she had orally admitted to him that she was a prostitute, that there was no indication that Damon knew by the officer's own admission. And so notwithstanding the fact that Officer Grosvenor knew her to be a prostitute, there was no objective indication that Damon knew her to be a prostitute. Well, and approaching because you have some sort of sense or suspicion or something, that something's going on, that doesn't mean you get to frisk right away. Absolutely not. Contrary to the trial court's perfunctory ruling in this case, the right to frisk does not ensue automatically from the right to approach. And even if Damon knew that this woman was in fact a prostitute, despite any objective indication in the record that she was in fact prostituting that evening, and I would respectfully indicate that this woman is not necessarily perpetually prostituting, the officer testified that he saw Damon speak for a split second to this woman after having only observed this woman for under two minutes. Did he add something else, though? Was there some discussion and did the court rely on this information about possible robberies in the vicinity where the suspect had been wearing a black hat?  A ski mask? Yes, Justice McBride. What Officer Grobner also testified that he observed as he approached, so he started to approach, was that Damon was wearing a partial winter ski mask. This was February in Chicago, and it's 7 p.m. A partial winter ski mask around his neck, and the officer testified that he found that to be suspicious because there had been robberies in the area with the M.O. being that the robber wore a ski mask, like the mask that Damon was wearing. But I would indicate that the fact that Damon was wearing this common article of clothing is not sufficient enough for the officer to even approach and begin the process of a Terry stab. This court has held in People v. Washington back in 1995 that the fact that the officers testified that the suspect fits the general description is not sufficient or even was wearing a common piece of clothing as someone who they suspected to be involved in criminal activity. In that case, the testimony was that the man, the officer, saw it as the robber was wearing a blue coat and a black hat. And the individual that the officers performed a Terry stab on in that case was even in the vicinity of the robbery, minutes after the robbery was to have occurred. In this case, Officer Grobner does not testify the vicinity of the robberies, whether he personally responded to any of them, any other physical description of the robber, his height, his age, his complexion, his weight. It's a single item of common clothing that the officer offered to justify his action of walking up and immediately frisking Damon. I think it's remarkable that there's absolutely no inquiry here. Terry v. Ohio presumes and the statute codifying Terry v. Illinois presupposes that the officer will engage in some inquiry. The officer in this case testified that while he did ask Damon questions and discerned that he lived in the neighborhood and was 16 years old, he only did so after frisking him. So what we have here is a plainclothes officer who does not even announce his office, see a momentary, innocuous comment made to a woman the officer knows to be a prostitute, and he runs up and places his hands on that individual. Contrary to the trial court's ruling, this is not a reasonable exercise of the officer's authority. In fact, with regard to the reasonableness of the frisk, though it must be judged from the objective of a reasonable officer and therefore is not a subjective analysis with regard to the way Officer Grobner felt at the moment, the Illinois Supreme Court in People v. Galvin said that the officer's subjective fear for his safety is a relevant inquiry in the overall objective test. And in this case, it's illuminating that Officer Grobner testified that he didn't even, in essence his testimony amounted to a rejection of the idea that he even subjectively felt he feared for his own safety and the safety of others. When asked on cross-examination if Damon was free to leave while being frisked, the officer testified yes, it would have been fine with him if Damon walked away during the frisk. So even judged from the subjective standard, it's hard to conclude how this officer could have felt that his safety or the safety of those around him could have been imperiled by Damon's presence on the street. Your Honors, Officer Grobner even judged assessing his testimony with all due credibility interpretations and determinations, witnessed only an innocuous and momentary interaction between two pedestrians on the street. He did not perceive criminal meaning and conduct that would have seemed wholly innocuous to you and I. Terry recognized that the freedom from overbearing or harassing governmental intrusion is just as valuable on the street as it is in our homes. And while we want officers to be proactive, the Constitution does not permit them to be this proactive. Because the Fourth Amendment does not contemplate that pedestrians be stopped and frisked immediately on grounds as slim as these, this Court should suppress the challenged evidence. Your Honors, I have no further questions. Thank you. Just one question. Our standard of review here? Your standard of review with regard to the legal determination of the stop and frisk is de novo. Okay, but there is a first step, stage two, isn't there? With regard to whether or not the defendant set forth a prima facie case of the illegality of the stop and frisk, he did. And he did so by demonstrating that there was no warrant for his arrest and that his actions at the time in crossing the And the factual determinations? Those would be subject to the manifestly erroneous standard. And although we contest the credibility determinations made by the trial judge in this case, we argue that even under a legal standard of de novo review, this is not sufficient. So there is an initial stage where we have to be deferential to the trial judge? With regard to the factual veracity of the officer's testimony, which for the purposes of this oral argument, we will concede that taking everything the officer said to be true, it's still not sufficient for a stop and frisk in this case. So it's very clear in your mind how we should function under this multiple standard of review test that the Supreme Court has imposed upon us? Absolutely. No problem. Well, I would emphasize that it's the state's burden to show that we have, there's a presumption now that the stop and frisk is illegal based on the prima facie case that was made up. And now it's the state's burden through the testimony of the single arresting officer that the stop and frisk were illegal. And to that end, the state, through that officer, must present specific, particular, and individualized suspicion that singles out this person's actions on the street from any of the other passersby. The state has failed in that burden. Thank you, Your Honors. Okay. May it please the Court. As to the standard of review, our Illinois Supreme Court has been very clear in People v. Sorenson that the factual determinations of the judge should be judged against a manifestly erroneous standard. In this situation, courts will consider the common sense judgments and inferences of human behavior when they determine whether a police officer's actions fall within that scope of the Terry stop. So when the judge says, in summing up his rationale for the ruling he's about to make, he says, the officer's testimony, I believe, is not so inconsistent with the way he wrote it, as it may be the fact that he did not write it as artfully as he might have. Now, I suppose you can tease out of that some sense. Well, what the judge is referring to is the two attempts at impeachment by omission. The oral testimony really is probably more conclusive as far as he's concerned than the written police report. Is that what he's saying? No, he's talking about the attempt at impeachment by omission. Okay. If you look at the entire record, the references specifically, he gives credit to the defense counsel for attempting impeachment by omission on two points. One regarding at what point did the officer see the hat, the ski mask around the neck and the hat, and the other one is at what point did he choose to get out of the car. When he discusses that during his ruling, he's referencing that even though the police officer was, that defense counsel attempted to impeach him, he's overall giving more credibility to the officer's testimony, his testimony in court, as to the sequence of events, which the officer did have a chance to explain. Well, would you agree that if he were just walking up to this person, let's put the mask, the cap to the side, would you agree that if Damon was simply walking up to this woman, that the officer knows to be a prostitute, that that would be a reason to go up and talk to him? Well, certainly. He could do a field interview. He could certainly go up to him and talk to him. Well, does he have to have anything for a field interview? What does he have to have? Well, in this case, he can go up to him and talk to him and ask him, as long as it's consensual. So even if he didn't know it was a prostitute. So he doesn't really need anything. No, not that. He can just go up and talk. Right. But for Terry, he certainly needs more. Okay, so for Terry, did he have enough to stop and detain him? Yes, he did. He did. Well, forgetting the mask now. Oh, okay. Forgetting the mask. Okay. Let's just focus on, he walks up to a woman who the officer believes is a prostitute. Is that enough to stop and detain him? It is, because the prostitute is in the act of- Of what? Of crime. I mean, the act of soliciting. Well, there's no testimony that she was doing anything. She was there, and he goes up to her, and they talk. They have- Or it looks like they're in a conversation. But they have knowledge from the night before when they talked to the prostitute. They have knowledge. That is her occupation. Is that enough to stop and detain someone? The fact that he might be about to commit under Terry? Absolutely. It's not just- Oh, is it enough? All right. Putting aside the little ski mask again. Sure. Is it enough for the police officer to immediately frisk him? If he's in fear of- Did he say that? He said that he feared for his safety. Is that objectively reasonable? For the police officer? Yes. It is, considering the totality of the circumstances. What about a solicitation for prostitution? What about that? That's the criminal activity that- Right. No, no, no. What I want to get to is how is that something that puts an objective officer in fear for his safety? Do you have any cases that say that? Not specifically as to that factual scenario. Is it enough for the officer to say, I was in fear of my safety? Or does it have to be objectively reasonable that when a police officer sees a young man go to a woman on the street that he thinks is a prostitute, that it's objectively reasonable for him to pat that young man down because he's afraid of guns? Under this certain set of circumstances, I agree with you. Walking up to the prostitute in and of itself might not give that degree of danger. Yeah, what does? What gives it is the high crime area is the fact that she is a prostitute. Drugs and selling drugs on the street, that's one thing. We've got legions of cases that say, you know, guns and drugs. Sure. I don't know any that suggests that an officer has a reasonable objective fear for his safety if he sees this person that he doesn't know anything about going up and talking to this woman that he believes is a prostitute. It's objectively reasonable based on his experience. There are robberies in the area. Okay. This is a high crime area. All right. Well, I'm just trying to put aside the mask thing. I'm just trying to get to the first part. No, I'm not talking about the mask. Outside of the mask, this is still a high crime area. Outside of the fact that there are robberies. Did he detail any of the high crimes and misdemeanors that are going on? He talked about the fact that there are robberies in the area. Is that enough for an officer to testify about? Or do they have to kind of? Give some information. You know, specific articulable facts. Absolutely. That there was a robbery on that corner like three hours beforehand. Or there was a robbery the night before and the offender had this, you know. Schemax. Yeah. What about the Washington case then? Well, the Washington case specifically is actually Croft and Washington are both distinguishable. Because in that case, the only information that the police officers actually had was that in general there had been some activity, some illegal activity. In the case of Croft, it was that there had been some theft and vandalism in the area. And the police officer more or less testified he acted on a hunch because the defendant was walking a bicycle at 1145. He didn't have anything articulable as this officer did. A wholly different situation than the one we have here where they're actually surveilling. They're not just looking at. They're surveilling a particular prostitute. They see the defendant cross the street, you know, notice the mask, are aware that there are robberies in the area, and then he goes up to the police officer. Well, they even need that if they know or they can suspect that what's going on is a prostitution transaction. Absolutely. They don't need anything more. It's an act of solicitation that either is occurring immediately and it happens in a split second. And if a crime is occurring as they approach. Correct. They have the right under Terry to do a protective pat-down. A protective pat-down is reasonable in that situation. To get to your question as to people versus Washington, in that situation there is simply information that there were robberies in the area. And the defendant did a general description of the robber, but he was just standing and he was brushing off snow from his car. If the trial judge has the wrong reasoning in what he came up with, is there a problem? Is there a problem? Is there a problem for the state? If the judge has two different erroneous beliefs when he's reviewing this, is there a problem? For example, the judge, here I'll just tell you. First he said the pat-down was permissible once the stop has begun. And then he said the officer's subjective belief was the correct test. Wrong word. Then he said, then he said, Grobner did not need articulable suspicion for exactly what he was looking for. It is what is on his mind. And once the stop has begun, the officer is entitled to do a protective search. Now, generally it doesn't matter what the reasons are for what a court may do in order for us to affirm. But in a case of a very stop, it does matter, doesn't it, that the judge is operating under the correct legal standard. But the ultimate outcome is accurate. As far as subjective and objective, I agree that was a terminology. There did need to be subjective, articulable, reasonable suspicion. It's not subjective. Objective, exactly. Yes, objective under Terry. This court can certainly affirm because the ultimate result was accurate as you look through the entire record. Well, that's if you think it's sufficient for someone who's walking up to a prostitute to be frisked as soon as you approach them. That's not the test. It's not just. Certainly. So I don't know that the test is demonstrated by the record here. This was, there were no questions asked, nothing. He immediately frisked him. Well, if we could just go back. And then later he said, I noticed the mask. There's a question about when he noticed it. And that brings me, if I can talk about the ski mask at this point. Given that the standard is manifestly erroneous, whether the judge's determination of the officer's testimony and the facts in this case, here he believed, Officer Grobner, that as he was walking up to the defendant or to the respondent, he saw the mask. And that triggered, that coupled with the fact he thought he might be in the act of soliciting a prostitute, triggered the Terry pat-down, the protective pat-down. Those two things combined take it outside of the world of Croft and Washington and put it more in line with a case like People v. White, where the Illinois Supreme Court said that the Terry staff is justified when there's ongoing activity that's happening and there are specific facts that a police officer can actually articulate. Here he articulated two. And two main ones. One, that he was talking to the defendant across the street to talk to a prostitute, an act of solicitation that either was occurring or was about to occur. When did the officer have a fear for his safety? Did he? When? At the time that he approached the defendant. At the time he approached the defendant. At the time that he approached the defendant. Not when he first observed the defendant. Well, when he first observed him, he just saw him walking down the street. So no, not at that point. When he started approaching him and realized that he had a fear for his safety, did he call for backup? His backup was already there. And, you know, there was an offer of proof that one of the other officers would have testified that he had gotten out of the car as well. We don't have that in the record. Change this to an obvious drug transaction where he observes the two of them exchanging packets or something like that. No, this is not a drug case. Well, let's suppose it was. Well, supposing it is. That's the only difference is that instead of suspecting that she's a prostitute as he approaches and throw out the ski mask for the moment, he's just observing a drug transaction taking place right before his very eyes. Can he pat down? Absolutely. I mean, that's an even better case. Does he have to fear for his safety in order to pat down? Well, he would be in fear of his safety. Why? He could do the pat down because as you've already articulated. Crime in progress. Crime in progress and guns and violence. Well, and drugs. Let me interject here. Crime in progress. I mean, not the drugs. No, but is there really a crime in progress here? I mean, is there something that the officer saw? Did he see him give him some money? Did he see him go into his pockets?  And speaking to a person who's a known prostitute, that ergo, there's about to be an act of solicitation. Why could he be asking her for a light or something? I don't know how we're getting to this crime about to be committed because one person is talking to a known prostitute. Nothing else. He's standing there. Is that really a crime? Well, first of all, this area is known for prostitution, so it wasn't just one. Oh, well, that's not in the record. Second of all. Is that in the record at all for prostitution? That the area had prostitutes. They were on a prostitution watch, according to his testimony. That's why they were surveilling her. Okay, so then it's a crime that's about to be committed. Well, in addition to being an area of known prostitution, they talked to the specific prostitute who was surveilling her. Then he watched the defendant not just casually walk past her. He watched him cross the street in order to talk to her. And then the final thing is he wasn't asking her for the time or anything, which we can completely not hypothesize about because the defendant denied this entire situation. And that's something that certainly the judge could factor in. He denied anything happened at all. So we don't need to hypothesize. Was he asking the time? Was she a relative? Did he know she was a prostitute? He simply didn't testify about it, and the judge was certainly in a position to evaluate that testimony, the fact the defendant lied about it. So the rule of law should be whenever somebody talks to a woman who is a known prostitute, the police have a right to search. Is that the rule of law? No, the rule of law is whenever a police officer anticipates that a crime is about to be committed and an act of solicitation is a crime, the police officer may approach the individual. In approaching the individual, if there are additional circumstances that cause him to fear for his safety, he can certainly do a protective action. Okay, and the additional circumstances here is that the minor had his hand in his pocket. That's one. And the other is the ski mask. Yes. Okay. So the ski mask, anybody wearing a ski mask, the police are absolutely in fear of their life. No, but anyone who might be wearing a ski mask in an area known for prostitution who crossed the street to talk to a prostitute and then has a similar type of ski mask to an offender who was in the area, that's those circumstances. When was this offender in the area? Well, we don't have all of that information in here. You mean we don't know? We had information that there had been robberies in the area and that the offender had worn a similar. Robberies in the area, okay. That the offender had worn a similar ski mask. So certainly the ski mask in and of itself, certainly not enough. If a woman had walked up to her, would it make a difference? That might make a difference, yeah. But that's not the situation we have here. We have the situation of him seeing the defendant cross the street to talk to her, and she was targeted and she was under surveillance. So the rule of law is that as long as the officer's objective, from an objective standpoint. And if this were a drug transaction, we'd have numerous cases to cite where there's drugs, there might be weapons. So that an officer could objectively say, but we don't have that in any case that you've cited or that I've been able to find where the prostitution goes hand-in-hand with weapons. Well, the drug cases certainly are an easier case because there are a plethora of cases. There are a lot of drug cases. Particularly in the 1400 block of North Lurie. The drug cases? And the prostitution as well. But not guns and prostitution. We're talking about just the prostitution. We often find cases equating drugs with money, guns. But we don't have any that suggest that most police officers are afraid when they see a man approaching a prostitute. This might be the first one that you will have that. This is the situation where he not only approaches a prostitute. But this is the situation where he did approach the defendant and because he saw the ski mask, it was simultaneous. It wasn't just one. It wasn't just that he was talking to a prostitute that they were particularly targeting. And when the judge evaluates this, it is from an objective perspective based on common sense. It's a common sense with the police officer in the high crime area where there have been robberies. That's what he testified to and that is in the record. And it's also inferences based on human behavior. It is not a stretch of the imagination that if there were robberies in the area, if there was an offender that had a similar ski mask, and then you have a defendant who's walking across the street to talk to a prostitute, taking all of those together, it's not unreasonable for the police officer to do just a protective pat down. He didn't go in his jacket. He didn't pat him all the way down. He did a protective pat down. The defendant had his hands in the pocket, didn't take them out, and he found the gun right in his pocket. I mean, Terry is a balancing test. It is to protect individuals from unreasonable searches and seizures, but it's certainly a balancing test where the courts can take that into consideration to allow police officers, enforcement officials to do their job. In this case, it's not the drug case. This is the case where it was a known prostitute in the act of a potential solicitation of a prostitute. That's the key factor, that and the hat. Can you sum up, please? Based on the trial judge's determination of Officer Grosvenor's testimony and based on the credibility of Officer Grosvenor's testimony contrasted against the credibility of the defendant's own testimony who denied everything, his determination to deny the motion to quash was certainly not unreasonable. Counsel, thank you. Ms. Hunter? That is your name, right, Hunter? Yes. You're Hunter. Your Honors, I'd like to make clear that we concede for the purposes of argument that Officer Grosvenor testified truthfully. So with regard to opposing counsel's argument about the credibility of his testimony, our argument is that his testimony taken as true is insufficient. Now, opposing counsel says that this was a known prostitute. The question is known to whom? Known to Officer Grosvenor. Justice Cahill noticed that the officer was surveyed and they were doing a prostitution surveillance. But Officer Grosvenor testified that he saw Damon cross the street upon the same time as he happened to notice Erica Cudjoe. So he did not testify that they were setting up a surveillance of her but simply that he knew her to be a prostitute. They were ostensibly on their beat. He saw her and at the same time saw Damon cross the street and speak to her. He could not hear what was said, which is important, and Damon could have been asking her for the time. Did he have the right to approach at all? Even if Damon knew her to be a prostitute, no. I don't think that that's sufficient grounds to allow the officer to approach. And essentially what that means is that if Your Honors are walking down the street and a prostitute asks you for the time and you pleasantly respond, then you're subject to a stop and an immediate arrest. Are you going to make this personal? Well, I think it is personal. These are our Fourth Amendment rights, and these are the rights that pedestrians should feel like they're capable of exercising freely in the street. Justice McBride is rightfully concerned about the lack of the objective basis that Damon posed a threat to the public. I think it's important that the officer merely affirm the prosecution's suggestion that he may have felt fear for his safety. It's also extremely significant that when the officer approached, Damon did not make any evasive movements. He did not make any threatened movements. He did not attempt to walk away. The ski mask that has been made so much of, he was wearing around his neck, so there could have been no reasonable belief that Damon was about to somehow rob this prostitute, as the State suggested in their briefs. And I'd like to draw this Court's attention, since there was discussion about had this been a drug transaction, that this very Court in People v. Riviera held that there's no immediate risk of drug dealers, just like the Illinois Supreme Court held in People v. Gavin, that the mere notion that burglars might sometimes be armed does not justify an immediate risk. This Court held in Riviera that even a limited search of outer clothing for weapons constitutes a severe, though brief, intrusion on our personal security. Your Honors, people who live in high crime areas do not enjoy lesser Fourth Amendment rights. The Fourth Amendment's deterrent effect can only be meaningfully realized in those instances in which this Court subjects the officer's observations and the reasonableness of those observations to scrutiny and review. We ask that this Court suppress the challenged evidence and reverse Damon's adjudication of it. Thank you. Counsel, thank you both. The oral argument was very useful. The case will be taken under advisement.